## Appeal of GEORGE E. CRANE CO., INC.

Docket No. 142. Submitted June 9, 1925. Decided September 9, 1925.

*Ernest L. Riley, C. P. A.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

The above-entitled appeal is from the determination of a deficiency in income and profits taxes for the calendar year 1918 in the amount of $1,965.55. The deficiency results from the denial by the Commissioner of personal service classification to the taxpayer.

FINDINGS OF FACT.

1. The taxpayer is a California corporation organized in 1905 and doing business in the City of Stockton.

2. The taxpayer is engaged in the business of buying and selling real estate for clients, collecting rents, doing a general insurance brokerage business, acting as financial agent, and loaning money for clients.

3. George E. Crane and W. E. Washington were the owners in equal shares of all of the capital stock of the taxpayer during the year 1918, excepting two shares which were held in the name of a bookkeeper of the taxpayer for the purpose of qualifying him as a director. Crane and Washington devoted their full time to the business of the taxpayer and acted as managers and salesmen. There were three employees of the taxpayer. The earnings were distributed equally between Crane and Washington at the end of each year.

4. The balance sheet shows the following to be the assets, liabilities, and capital of the taxpayer as of December 31, 1917, and December 31, 1918:

| | Dec. 31, 1917 | Dec. 31, 1918 |
|---|---|---|
| ASSETS | | |
| Current: | | |
| Cash on hand | $87.51 | $20.04 |
| Cash in banks | 88,062.82 | 18,379.16 |
| Accounts receivable (insurance premiums) | 1,296.77 | 5,291.07 |
| Notes receivable | 4,616.46 | 38,698.40 |
| Notes receivable (W. A. Washington) | 5,000.00 | 22,500.00 |
| Notes receivable (Geo. E. Crane) | | 2,500.00 |
| Advances (Geo. E. Crane) | | 8,153.72 |
| Advances (W. A. Washington) | | 7,665.18 |
| Revenue stamps | 15.23 | 2.64 |
| Inv. benns (taken in as commission) | 1,545.18 | |
| Union Island Farm | 33,293.24 | |
| Deposits (overdrawn) | 3,882.05 | 5,080.55 |
| Total | 137,799.26 | 108,290.76 |

| | Dec. 31, 1917 | Dec. 31, 1918 |
|---|---|---|
| ASSETS—continued | | |
| Fixed assets: | | |
| Furniture and fixtures | $1,281.07 | $1,152.97 |
| Stocks | 11,477.84 | 11,613.65 |
| Jones property | 344.41 | 344.41 |
| Newell block | 279.89 | 279.89 |
| Smith-Gould property | 539.53 | 539.53 |
| Total | 13,922.74 | 13,930.45 |
| Total assets | 151,722.00 | 122,221.21 |
| LIABILITIES AND CAPITAL | | |
| Current liabilities: | | |
| Suspense | 300.00 | |
| Demand deposits and collections | 118,933.79 | 72,421.21 |
| Notes payable | | 27,000.00 |
| Notes payable (Geo. E. Crane) | 7,500.00 | |
| Accounts payable (Geo. E. Crane) | 1,624.50 | |
| Accounts payable (W. A. Washington) | 563.71 | |
| Total | 128,922.00 | 99,421.21 |
| Capital—capital stock [1] | 22,800.00 | 22,800.00 |
| Total liabilities and capital | 151,722.00 | 122,221.21 |

[1] Includes stock dividend of $2,100 par value.

5. In support of its contention that its principal income resulted from the personal service of the stockholders the taxpayer has tabulated its income for 1918, as follows:

| | Amount. | Percentage of income. |
|---|---|---|
| Selling price of beans taken as commission over market value Dec. 31, 1917 | $247.17 | 1.04 |
| Commissions, attorneys' fees, etc | 11,702.18 | 49.50 |
| Commission and profit, Brandt & Knomann deal | 9,793.11 | 41.42 |
| Interest received $3,973.63 | | |
| Less interest paid 2,695.38 | 1,278.25 | 5.41 |
| Dividends received | 621.50 | 2.63 |
| Total gross income | 23,642.21 | 100.00 |

6. During 1918 taxpayer received authorization from Brandt & Knomann to purchase for them a ranch known as the Nichol ranch, it being agreed that Brandt & Knomann would pay $175 per acre and that the taxpayer was to make its commission from the seller. The taxpayer purchased the property for approximately $9,000 less than Brandt & Knomann had agreed to pay, representing its profit on the transaction. It held title to the property for some time, until the tenants on it were dispossessed. The transaction was financed by funds borrowed by the taxpayer.

DECISION.

The determination of the Commissioner is approved.

ARUNDELL not participating.